**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------X

In re:

BROADWAY EQUITY HOLDINGS LLC,

                                Debtor.

Chapter 11

Case No. 17-22242-rdd

--------------------------------------------------------------------------------X

BROADWAY EQUITY HOLDINGS LLC,

                              Plaintiff,

             -against-

152 BROADWAY HAVERSTRAW NY LLC, BLUE
BEVERAGE GROUP, INC., JOSEPH GOLDBERGER, TOBY
WEINBERGER, MFT HOLDINGS LLC, ESTATE OF JENO
GUTTMAN, RYVKIE GOLDBERGER, LAND TRACK
TITLE AGENCY, LLC, VILLAGE OF HAVERSTRAW
RECEIVER OF TAXES, COMMISSIONER OF FINANCE OF
THE COUNTY OF ROCKLAND, NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE, "JOHN
DOE NO. 1" through "JOHN DOE NO. 10", and said names
being fictitious, it being the intention of Plaintiff to designate all
persons, partnerships, corporations, or other entities in
possession of the premises, as tenant or otherwise any/or all
persons or entities having or claiming an interest in said
premises,

Adversary Case No.
17-8215-RDD

                              Defendants.

--------------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO (I) STAY ADVERSARY PROCEEDING AND DISCOVERY PENDING
## ARBITRATION, (II) TO REMAND BACK TO STATE COURT OR (III) ABSTAIN
## FROM HEARING THIS ADVERSARY PROCEEDING

ROBINSON BROG LEINWAND
 GREENE GENOVESE & GLUCK P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
(212) 603-6300

*Attorneys for Broadway Equity Holdings LLC*

{00860333.DOCX;1 }

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .....................................................................................3

    A.   The Loan and the $6,000,000 Promissory Note and Mortgage .........................3

    B.   The Borrowers' Default and Subsequent Fraudulent Conduct with the Sham
         Judgment Creditors ...........................................................................6

    C.   The State Action....................................................................................11

    D.   The Bankruptcy Action and Removal of the State Action.............................13

ARGUMENT......................................................................................................14

    I.   THIS COURT HAS JURISDICTION OVER THE STATE ACTION............................14

        A.   The Debtor Timely Filed the Notice of Removal.....................................14

        B.   This Court Has "Related To" Jurisdiction over the State Action................14

    II.   THIS DISPUTE IS NOT SUBJECT TO ANY ARBITRATION AGREEMENT.........15

        A.   The Debtor is Not a Signatory to Any Arbitration Agreement. ...................15

        B.   The Debtor Is Not an Alter Ego of the Signatories to the Bottling Agreement. .........17

        C.   The Mortgage Is Valid and Was Not Fraudulently Obtained. .....................18

    III.   MANDATORY ABSTENTION DOES NOT APPLY TO THIS ACTION.................21

    IV.   DEFENDANTS ARE NOT ENTITLED TO PERMISSIVE ABSTENTION OR
        EQUITABLE REMAND.........................................................................22

        A.   This Court Should Not Remand on Permissive Abstention Grounds. .........22

        B.   This Court Should Not Remand on Equitable Remand Grounds................25

CONCLUSION...................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Home Assur. Co. v. RJR Nabisco Holdings Corp.*,
    70 F. Supp. 2d 296 (S.D.N.Y. 1999) ............................................................................1

*Camofi Master LDC v. United States Coal Corp.*,
    527 B.R. 138 (Bankr. S.D.N.Y. 2015).................................................................23, 25

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995)...................................................................................................14

*Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*,
    189 F.3d 289 (2d Cir. 1999) ......................................................................................15

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*,
    912 F.2d 1162 (9th Cir. 1990) ...................................................................................23

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)...................................................................................................23

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992) ......................................................................................14

*DeNicola v. Frontline Asset Strategies*,
    279 F.R.D. 214 (E.D.N.Y. 2012)...............................................................................20

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)...................................................................................................16

*Gehan Props. II, Ltd. v. Integrated Performance Sys. (In re Performance Interconnect Corp.)*,
    2007 Bankr. LEXIS 2390 (Bankr. N.D. Tex. July 19, 2007) ......................................1

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
    6 N.Y.3d 371, 845 N.E.2d 1265, 812 N.Y.S.2d 435 (2006)......................................16

*IKB Int'l S.A. in Liquidation v. JP Morgan Chase & Co.*,
    2014 U.S. Dist. LEXIS 89574 (S.D.N.Y. June 27, 2014) ............................................3

*Kahan Jewelry Corp. v. Venus Casting, Inc.*,
    17 Misc. 3d 684 (Sup. Ct. N.Y. Cnty. 2007) .............................................................17

*Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*,
  78 A.D.2d 262, 434 N.Y.S.2d 359 (1st Dep't 1980) ...............................................16

*Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*,
  241 B.R. 511 (Bankr. S.D.N.Y. 1999) ...........................................................15, 23

*ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Commc'ns Corp.)*,
  285 B.R. 127 (Bankr. S.D.N.Y. 2002) .................................................................21

*Morris v. New York State Dep't of Taxation & Fin.*,
  82 N.Y.2d 135, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993)..............................17

*Nemsa Establishment v. Viral Testing Sys. Corp.*,
  1995 U.S. Dist. LEXIS 11650 (S.D.N.Y. 1995)..................................................26

*Pacor, Inc. v. Higgins*,
  743 F.2d 984 (3d Cir. 1984) ...............................................................................14

*Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*,
  277 B.R. 5 (S.D.N.Y. 2002) ...............................................................................21

*Ret. Sys. v. Ebbers (In re Worldcom, Inc. Sec. Litig.)*,
  293 B.R. 308 (S.D.N.Y. 2003) ...........................................................................21

*Riccardi v. Modern Silver Linen Supply Co., Inc.*,
  45 A.D.2d 191, 356 N.Y.S.2d 872 (1st Dep't 1974) ..........................................16

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
  198 F.3d 88 (2d Cir. 1999) ................................................................................17

*Tanbro Fabrics Corp. v. Deering Milliken, Inc.*,
  35 A.D.2d 469, 318 N.Y.S2d 764 (1st Dep't 1971) ...........................................16

*TNS Holdings., Inc. v. MKI Secs. Corp.*,
  92 N.Y.2d 335, 703 N.E.2d 749, 680 N.Y.S.2d 891 (1998).................................17

*Transit Mix Concrete Corp. v. Local Union No. 282*,
  809 F.2d 963 (2d Cir. 1987) ..............................................................................15

*Woodford v. Cmty. Action Ctr.*,
  239 F.3d 517 (2d Cir. 2001) ..............................................................................23

**Statutes**

11 U.S.C. § 541.......................................................................................................15

28 U.S.C. § 157 ............................................................................................................... 13, 14

28 U.S.C. § 1334 ........................................................................... 2, 14, 21, 22, 23, 25

28 U.S.C. § 1452 ............................................................................... 1, 14, 22, 25

Title 11, United States Code ................................................................................ 14, 22

N.Y. Exec. Law § 138 ............................................................................................ 20

**Other Authorities**

Fed. R. Bankr. P. 9027 ......................................................................................... 13, 14

Fed. R. Civ. P. 26 .................................................................................................... 13

Fed. R. Civ. P. 34 .................................................................................................... 13

Fed. R. Civ. P. 36 ........................................................................................... 13, 19, 20

Broadway Equity Holdings LLC ("Broadway Equity" or the "Debtor"), by and through its

attorneys, respectfully submits this memorandum of law, together with the Declaration of Fred B.

Ringel, Esq. dated May 25, 2017 (the "Ringel Decl."), and exhibits thereto, the Declaration of Joel

Wertzberger dated May 24, 2017 (the "Wertzberger Decl."), and exhibits thereto, the Declaration

of Judy Minster dated May 23, 2017 (the "Minster Decl."), and exhibits thereto, and the

Declaration of Savad Churgin, Esq. dated May 19, 2017 (the "Churgin Decl."), in opposition to the

motion (the "Motion") of defendant Joseph Goldberger ("J. Goldberger") and non-party Joseph

Menczer ("Menczer") seeking to (i) stay the adversary proceeding and discovery pending

arbitration, (ii) remand the action entitled *Broadway Equity Holdings LLC v. 152 Broadway

Haverstraw NY LLC, et al.*, Index No. 032478/2015 (the "State Action") back to the Supreme

Court of the State of New York, County of Rockland (the "State Court"), or (iii) abstain from

hearing the adversary proceeding.[1]

## PRELIMINARY STATEMENT

The Debtor timely removed the State Action, pursuant to 28 U.S.C. § 1452(a), to this Court

(Adv. Dkt. No. 1), where the Debtor's Chapter 11 bankruptcy is pending. In 2015, the Debtor

commenced the State Action – an action to foreclose on a note and mortgage held by the Debtor

that is the Debtor's single most-valuable asset – but it laid dormant since, with no discovery taking

place and no ruling on the Debtor's pending motion for a receivership (or any other motion). The

---

[1]    Menczer is a non-party, not a defendant in the State Action, and has not been issued any requests for discovery. He does not have standing to move this Court to remand the State Action back to the State Court. *See Gehan Props. II, Ltd. v. Integrated Performance Sys. (In re Performance Interconnect Corp.)*, 2007 Bankr. LEXIS 2390, at *6 (Bankr. N.D. Tex. July 19, 2007) (stating "the Defendants are correct when they assert that the Trustee, a non-party to the Fraudulent Transfer Suit, could not properly file the Trustee's Joinder in the Remand Motion. Under the Federal Rules of Civil Procedure, it is clear that *parties* are permitted to file pleadings and otherwise be heard in a civil action, but that a non-party cannot either file pleadings or be heard. This seems quite basic." (emphasis in original)); *cf. Am. Home Assur. Co. v. RJR Nabisco Holdings Corp.*, 70 F. Supp. 2d 296, 298 (S.D.N.Y. 1999) ("a non-party -- even one that, like Nabisco, claims to be a real party in interest -- has no authority to notice removal"). Nor does he have standing to move to stay discovery that has not been issued to him. Thus, the Debtor addresses the arguments advanced in the Motion as belonging to J. Goldberger only.

defendants successfully delayed the State Action by active gamesmanship, including convincing the State Court to delay proceeding with the case because defendants purportedly intended to move to compel arbitration against the Debtor (even though the Debtor is not party to any arbitration agreement). Unsurprisingly, the defendants never formally demanded or moved to compel arbitration, but the State Court allowed the case to languish without taking any further action or rendering any decisions. The Debtor's inability to foreclose on its mortgage prevented the Debtor from paying its creditors, leading to the Debtor's bankruptcy. Now, J. Goldberger, through the Motion, revives the same specious (and stale) claim that this Court should stay the action and compel arbitration, or, in the alternative, remand the case back to the State Court. This Court should deny the Motion for the following reasons.

First, pursuant to 28 U.S.C. § 1334(b), this Court has "related to" jurisdiction over the State Action, which seeks to affect property of the Debtor's bankruptcy estate, including the Debtor's rights and interest in the note and mortgage. Second, there is no basis to stay this action and compel arbitration, as the Debtor is not a party to any arbitration agreement and is not an "alter ego" to any party to the agreement J. Goldberger's argument relies upon. For the same reason, there is no reason to stay discovery. Third, with no basis for his claims, the gravamen of J. Goldberger's argument is that remand is appropriate because the mortgage and note were obtained "fraudulently" and the filing of this bankruptcy action was "a bad faith filing." This is the pot calling the kettle black, as the Debtor was driven to bankruptcy by J. Goldberger's bad faith conduct in falsifying and recording a "correction mortgage" that improperly attempted to subordinate the original mortgage, and the Debtor's rights thereunder, to confessions of judgment

filed by the defendants.[2]   J. Goldberger already admitted the validity of the mortgage, including

the fact that he affixed his signature to it, by failing to answer the requests for admission the Debtor

issued to him.

Finally, J. Goldberger's abstention and equitable remand argument lacks merit based on

the factors traditionally considered under those doctrines.   Nothing substantive has occurred in

the State Action, the State of New York has no special interest in this proceeding, there is no

unique or novel question of law, and, most importantly, the history of this case has shown the State

Court unwilling or unable to timely adjudicate this dispute.   The efficient and effective

administration of the bankruptcy estate favors removal to this Court.

## STATEMENT OF FACTS

**A.     The Loan and the $6,000,000 Promissory Note and Mortgage**

Menczer and J. Goldberger (the "Sellers"), on the one hand, and Aron Wolcowitz and Joel

Wertzberger ("Wertzberger", together with Aron Wolcowitz, the "Buyers"), on the other hand,

entered into the Agreement and Commitment to sell dated December 26, 2012 (the "Bottling

Agreement").   (Wertzberger Decl. ¶ 3, Ex. A (copy of the Bottling Agreement).)   The Bottling

Agreement concerned the business and assets of Blue Beverage Group, Inc. ("Blue Beverage"),

including real property located at 152 Broadway, Village of Haverstraw, Town of Haverstraw,

County of Rockland, State of New York, Tax Map Designations: Section 27.5 Block 2 Lot 1 (the

"Property") that was being operated by 152 Broadway Haverstraw NY LLC ("152 Broadway",

together with Blue Beverage, the "Borrowers") as a bottling plant.   (Wertzberger Decl. ¶ 4, Ex.

---

2       J. Goldberger also argues for remand because the Notice of Removal is "defective in that it fails to attach 'a
copy of all process and pleadings' in the [State Action]."   (Mot. 13 ¶ 38.)   This is a frivolous argument.   The Notice
of Removal attached the State Action's operative complaint and docket, which catalogued the remaining documents in
the case.   (*See* Adv. Dkt. No. 1.)   Although the Notice of Removal is not defective in any respect, to the extent there
is any defect, it is technical, not substantive, and can be amended to attach any documents J. Goldberger contends are
missing.   *See IKB Int'l S.A. in Liquidation v. JP Morgan Chase & Co.*, 2014 U.S. Dist. LEXIS 89574, at *6 (S.D.N.Y.
June 27, 2014) (precluding only "substantive" amendments to the Notice of Removal after the 30-day window).

A.)   J. Goldberger and Menczer were principles of the Borrowers.   (Wertzberger Decl. ¶ 4.)

The Buyers contemplated purchasing the bottling business, including the Property, from the Sellers and agreed to arrange to obtain $4,300,000 in financing from lenders for the continued operation of the bottling plant (the "Loan").   (Wertzberger Decl. ¶ 5, Ex. A, ¶¶ 2-7.)   Although the Buyers originally intended to arrange for commercial bank financing, they eventually assembled a group of individuals and entities, some in which Wertzberger has a financial interest, to act as the "bank" and provide financing on a secured basis (the "Lenders") (i.e, The Fink Family IRR Trust, Talmu Inc., Hamilton East Man Capital LLC, Elfie Family Holdings II, LLC, Woodmere Funding, LLC, Katersky Holdings II, LLC, The C Fink Family Trust, and Joseph Riegler).   (Wertzberger Decl. ¶ 6; *see also* Minster Decl. ¶ 3.)   The Lenders were not parties to the Bottling Agreement.   (Wertzberger Decl. ¶ 6.)

The parties to the Bottling Agreement contemplated secured, bank financing. (Wertzberger Decl. ¶ 7, Ex. A ¶ 17 (stating "Side B is allowed to take out a mortgage from a bank on the buildings or business properties, on the business itself or on the business buildings, and Side A obligated himself to sign any documents that are needed.").)   The Buyers had the right to terminate the agreement on ninety (90) days' notice and have the funds which were advanced to the Borrowers returned in payment installations over a thirty-six (36) month period. (Wertzberger Decl. ¶ 8, Ex. A ¶ 19.)

After execution of the Bottling Agreement, in early 2013, the Lenders began making advances to the Borrowers in varying amounts.   (Wertzberger Decl. ¶ 9.)   By mid-to-late 2014, the Lenders had advanced in excess of $6,000,000 to the Borrowers and the Buyers exercised their right to have their funds returned to them.   (Wertzberger Decl. ¶ 10.)   The Lenders notified the Borrowers of their demand for a mortgage to secure the return of the funds.   (*Id.*)   After the

Buyers reviewed all of Blue Beverage's financial statements and books and records, the Borrowers, J. Goldberger, and Menczer all agreed that at least $5,300,000 had been advanced to the Borrowers and the Borrowers provided a promissory note and mortgage in that amount. (Wertzberger Decl. ¶ 11.)

On September 4, 2014, the Lenders assigned their rights to repayment of the Loan to the Debtor in exchange for membership interests in the Debtor.   (Minster Decl. ¶ 5, Ex. A (collateral assignments).)   Neither Wertzberger nor Mr. Wolcowitz are members of the Debtor.   (Minster Decl. ¶ 4.)   Thereafter, on the same day, the Borrowers gave a promissory note to the Debtor in the sum of $6,000,000 (the "Note"), evidencing the full amount of the Loan.   (Minster Decl. ¶ 6, Ex. B (copy of the Note).)   J. Goldberger affixed his signature to the Note on behalf of each of the Borrowers.   (*Id.*)   The Note acknowledged that $5,300,000 had been advanced as of the signing of the Note and $700,000 could be advanced at a later date.   (*Id.*)   The Note states, on page 1, that the Borrowers "jointly and severally promise to pay to the order of BROADWAY EQUITY HOLDINGS, LLC . . . the principle sum of SIX MILLION DOLLARS ($6,000,000)."   (*Id.*)   The Note required the Borrowers to pay the principal balance in twelve equal quarterly installments beginning four and a half months after the Debtor made demand for payment.   (*Id.*)

Simultaneously with the execution of the Note, 152 Broadway, as mortgagor, and the Debtor, as mortgagee, made a mortgage dated September 4, 2014, to secure the payment of indebtedness in the sum of $6,000,000, mortgaging the Property to the Debtor (the "Mortgage"). (Minster Decl. ¶ 7, Ex. C (copy of the Mortgage)).   The Note and the Mortgage established the Borrowers' indebtedness to the Debtor.   (Minster Decl. ¶ 8.)   At the September 4, 2014 closing, Menczer and Goldberger acknowledged that they were providing the promissory note and mortgage as security for the Lenders.   (Wertzberger Decl. ¶ 12.)   On September 19, 2014, the

Debtor caused the Mortgage to be recorded in the Rockland County Clerk's Office, as Instrument

No. 2014-25287, paying approximately $70,000 in mortgage recording tax.   (*Id.*)

At the time of the recording of the Mortgage, the Mortgage was and is subordinate to:

(a)    a mortgage by the Borrowers to Empire State Certified Development

Corporation, executed on September 17, 2009 and recorded in the Rockland County Clerk's Office

on September 29, 2009, under Instrument No. 2009-35291, with the original principal balance of

$2,493,000, which mortgage was assigned to the U.S. Small Business Administration by an

Assignment of Mortgage executed on September 17, 2009, and recorded in the Rockland County

Clerk's Office on September 29, 2009, under Instrument No. 2009-35292; and

(b)    a mortgage by the Borrowers to Jay Kimmel, as Nominee for Taron Partners

LLC, executed on August 18, 2008, and recorded in the Rockland County Clerk's Office on

September 17, 2008, under Instrument No. 2008-42231, with the original principal balance of

$5,000,000, which mortgage was assigned to Provident Bank by an Assignment of Mortgage

executed on September 17, 2009, and recorded in the Rockland County Clerk's Office on October

7, 2009, under Instrument No. 2009-36469.   (Minster Decl. ¶ 9.)

**B.    The Borrowers' Default and Subsequent Fraudulent Conduct with the Sham
Judgment Creditors.**

On October 6, 2014, the Debtor demanded, by letter addressed to the attention of J.

Goldberger and Menczer (the "Demand Letter"), that both of the Borrowers "commence, pursuant

to the terms of the [N]ote, repayment of the outstanding amounts due under the [N]ote."   (Minster

Decl. ¶ 10, Ex. D (copy of the Demand Letter)). The Borrowers never made any payments

pursuant to the Note.   (*Id.*)   Instead, the Borrowers and Toby Weinberger ("Weinberger"), MFT

Holdings LLC ("MFT"), the Estate of Jeno Guttman (the "Guttman Estate"), Ryvkie Goldberger

("Ryvkie", together with Weinberger, MFT, the Guttman Estate, the "Sham Judgment Creditors")

colluded together and, on December 30, 2014, agreed to and entered into the following confessions of judgment (collectively, the "Sham Judgments"), which were not based on *bona fide* debts, obligations, controversies, and/or settlements of any controversies and were a fraud upon bona fide creditors, including the Debtor (Minster Decl. ¶ 11.):

    a.    Weinberger purports to be a judgment creditor pursuant to a Judgment entered against 152 Broadway and Blue Beverage in the Supreme Court of the State of New York, Kings County, on December 30, 2014 (the "Weinberger Judgment"), and a Transcript of the Weinberger Judgment was filed on January 9, 2015 in the Rockland County Clerk's Office under Instrument No. 2015-654, for the sum of $1,615,960.   (Minster Decl. ¶ 11(a), Ex. E (transcript of Weinberger Judgment).)

    b.    Guttman purported to be a judgment creditor pursuant to a Judgment entered against 152 Broadway and Blue Beverage in the Supreme Court of the State of New York, Kings County, on December 30, 2014 9the "Guttman Judgment"), and a Transcript of Guttman Judgment was filed on January 9, 2015 in the Rockland County Clerk's Office under Instrument No. 2015-656, for the sum of $4,370,316.99, **notwithstanding that Guttman had died over six (6) years earlier on December 7, 2007**.   (Minster Decl. ¶ 11(b), Exs. F (transcript of Guttman Judgment) & G (copy of Guttman death certificate).)

    c.    MFT purports to be a judgment creditor pursuant to a Judgment entered against defendants 152 Broadway and Blue Beverage in the Supreme Court of the State of New York, Kings County, on December 30, 2014 (the "MFT Judgment"), and a Transcript of MFT Judgment was filed on January 9, 2015 in the Rockland County

Clerk's Office under Instrument No. 2015-655, for the sum of $1,765,710. (Minster Decl. ¶ 11(c), Ex. H (transcript of MFT Judgment).)

d.    Ryvkie purports to be a judgment creditor pursuant to a Judgment entered against defendants 152 Broadway and Blue Beverage in the Supreme Court of the State of New York, Kings County, on December 30, 2014 (the "Ryvkie Judgment"), and a Transcript of Ryvkie Judgment was filed on January 9, 2015 in the Rockland County Clerk's Office under Instrument No. 2015-657, for the sum of $6,098,210.20.   (Minster Decl. ¶ 11(d), Ex. I (transcript of Ryvkie Judgment).)

Critically, after the Sham Judgments were filed with the Supreme Court of the State of New York, Kings County, and recorded in the Rockland County Clerk's Office, 152 Broadway executed a document described as a "correction mortgage" and made February 18, 2015 (the "Sham Correction Mortgage").   (Minster Decl. ¶ 12, Ex. J (copy of the Sham Correction Mortgage).)   On behalf of 152 Broadway, J. Goldberger affixed his signature to the Sham Correction Mortgage.   (*Id.*)   The Sham Correction Mortgage purported to correct the legal description of the Mortgage, as evidenced by a handwritten note on its first page, stating "[t]his mortgage is a correction mortgage to correct one legal description of mortgage in 2014-25287." (Minster Decl. ¶ 13, Ex. J.)   Notwithstanding this handwritten note, the legal description contained in the Sham Correction Mortgage was, and is, identical to the legal description contained in the Mortgage.   (*Id.*)

The Sham Correction Mortgage added eight (8) new paragraphs, numbered nineteen (19) and one (1) through seven (7) and appearing after paragraph eighteen (18), that were not contained in the Mortgage.   (Minster Decl. ¶ 14, Ex. J.)   The new paragraphs contained in the Sham Correction Mortgage, among other things, changed the date of recording of the mortgage from

September 19, 2014, to February 23, 2015, and made the following modifications to the Mortgage

which the Debtor did not agree to (*Id.*):

a.  Changed the interest rate after a default from twenty (20) percent to ten (10%) percent (Minster Decl. ¶ 14, Ex. J at p. 8, ¶ 16);

b.  Provided that any action to foreclose the mortgage must be accompanied by written notice and proof of actual delivery of notice that the mortgagor has been given 18 months to cure any default by the mortgagor of its obligations under the Note and/or the mortgage (Minster Decl. ¶ 14, Ex. J at 8, ¶ 1);

c.  That the mortgagee waives its right to recover any interest from the mortgagor during the cure period and for 24 months thereafter (Minster Decl. ¶ 14, Ex. J at 8, ¶ 2);

d.  That the mortgagee forever waives the right to the appointment of a receiver (Minster Decl. ¶ 14, Ex. J at 8, ¶ 3);

e.  That the mortgage and its enforceability is subject to the provisions of a Jewish language document executed by the mortgagor and the mortgagee on December 26, 2012 requiring that disputes between the parties are to be decided by a Jewish Beth Din to be selected by the mortgagor (Minster Decl. ¶ 14, Ex. J at 8, ¶ 4);

f.  That the mortgage is subordinate to present or future mortgages recorded against the real property to the extent of $13,000,000 (Minster Decl. ¶ 14, Ex. J at 8, ¶ 5);

g.  That the mortgagee shall not be entitled to a deficiency or money judgment against the guarantor of the mortgage or the underlying note (Minster Decl. ¶ 14, Ex. J at 8, ¶ 6); and

h.  That the mortgage is not assignable (Minster Decl. ¶ 14, Ex. J at 8, ¶ 7).

The Sham Correction Mortgage, executed solely by J. Goldberger, conveniently included a provision making the Mortgage subject to the Bottling Agreement, an agreement that was not executed by the parties to the Note and the Mortgage and which was made at least two years before the Lenders assigned their rights to repayment of the Loan to the Debtor.   (Minster Decl. ¶ 15, Ex. J at 8, ¶ 4.)   The Debtor never agreed to any of the modifications to the Mortgage that the Sham Correction Mortgage purported to make.  (Minster Decl. ¶ 16.)   152 Broadway caused Land Track Title Company to file the Sham Correction Mortgage for recording with the Clerk's Office for Rockland County, New York. (Minster Decl. ¶ 17.)   On February 23, 2015, the Clerk's office for Rockland County, New York recorded the Sham Correction Mortgage.   (Minster Decl. ¶ 17, Ex. J.)

152 Broadway caused the Sham Correction Mortgage to be filed to, *inter alia,* subordinate the Mortgage to the Sham Judgments held by the Sham Judgment Creditors, such that the Sham Judgment Creditors could claim they held "priority of payment" rights for the Sham Judgments over the Mortgage, thereby frustrating the Debtor's ability to collect the amount due under the Note and the Mortgage.   (Minster Decl. ¶ 18.)   Upon information and belief, the Sham Judgment Creditors are all relatives, friends, and/or current or former employees of J. Goldberger and/or the Borrowers.   (Minster Decl. ¶ 19.)   Upon information and belief, the Sham Judgment Creditors knew that the Sham Judgments were being filed to improperly "prime" the Mortgage, that the Borrowers had no intention of repaying the Loan, and that the Borrowers were using the Sham Judgments to frustrate the Debtor from collecting on the Note and the Mortgage.   (Minster Decl. ¶ 20.)   152 Broadway's failure to make any payments on the Note, the execution, filing, and recording of the Sham Judgments, and the recording of the Sham Correction Mortgage revealed 152 Broadway's bad faith and fraudulent conduct concerning the Loan.   (Minster Dec. ¶ 21.)

C.    **The State Action**

On June 9, 2015, the Debtor commenced the State Action to foreclose on the Mortgage. (Ringel Decl. Ex. A (copy of the docket in the State Action).)   The complaint asserted claims for foreclosure and for declaratory relief.   (Ringel Decl. Ex. B (copy of the complaint).)   On June 12, 2015, the Debtor moved by Order to Show Cause for the appointment of a receiver of rents (the "Receivership Motion").   (Ringel Decl. Ex. A, Dkt. Nos. 8-13.)   On July 23, 2015, the State Court held a hearing on the Receivership Motion.   (Ringel Decl. Ex. C (transcript of hearing before Hon. Robert M. Berliner dated July 23, 2015 (hereinafter, "Tr. __")).)

During the hearing, the defendants' counsel, Mr. Sarajian, in opposition to the Receivership Motion, first misrepresented the terms of the Bottling Agreement, stating *the Debtor* "entered into a contract of sale to purchase this property" (Tr. 8:23-25) and mischaracterized the underlying dispute, stating it involved "returning the money that [the Debtor] advanced as part of the contract for sale" (Tr. 9:4).   He then advised the State Court, with absolutely no evidence (and none put forward to this day), that the Mortgage "was not properly signed, was not properly executed, was only a document that was subject to negotiation, and that they went forward somehow and got it, got a signature put on it, got a notary put on it, and got it recorded, when none of that was supposed to happen."   (Tr. 10:16-24.)   Moreover, he claimed that the Mortgage was supposed to be subject to the arbitration clause of the Bottling Agreement and that was the reason they unilaterally, and without the consent of the Debtor, did so in the Sham Correction Mortgage. (Tr. 12:9-17)   Counsel for the Debtor denied everything Mr. Sarajian claimed, reminding the State Court that the Debtor was foreclosing on the Mortgage and the Note and was not subject to the terms of the Bottling Agreement.   (Tr. 13:2-17.)   Nevertheless, J. Goldberger's new counsel repeats the same baseless and unsubstantiated arguments here.

Ultimately, in order to convince the State Court to put off deciding the Receivership Motion, Mr. Sarajian advised the State Court that "[w]hen we answer this [complaint], we are going to answer and make a motion to stay, pending arbitration, under this agreement." (Tr. 12:20-23.)  Based on that representation, the State Court allowed the defendants to respond in writing to the Receivership Motion and to move to compel arbitration by August 10, 2015.  (Tr. 15:2-4, 16:15-17:5.)  On August 21, 2015, Mr. Sarajian submitted a letter to Justice Berliner requesting additional time to respond to the Debtor's reply papers for the Receivership Motion and stated that "[w]e will deal with issues related to the arbitration agreement and execution of the mortgage in a separate motion to compel arbitration."  (Ringel Decl. Ex. D (August 21, 2015 letter); Churgin Decl. ¶ 5.)  The defendants to the State Action never moved to compel arbitration. (*See generally* Ringel Decl. Ex. A (copy of the docket reflecting no filing).)

On October 7, 2015, two months <u>after</u> the defendants misled the State Court that they would move to compel arbitration, counsel for the Debtor, Mr. Churgin, wrote to the State Court to request a preliminary conference on the Receivership Motion.  (Ringel Decl. Ex. E (October 7, 2015 letter); Churgin Decl. ¶ 6.)  After a week or two, when Mr. Churgin did not receive a response to his letter, he contacted the State Court's law clerk to determine the disposition of his request for a preliminary conference.  (Churgin Decl. ¶ 6.)  He was informed that no conference would be scheduled while the Receivership Motion was pending before the State Court.  (*Id.*) Thereafter, Mr. Churgin periodically contacted the Court's law clerk to inquire about the status of the Receiver motion.  (Churgin Decl. ¶ 7.)  Each time, he was informed that the matter was *sub judice*, and that no further conferences would be scheduled in the case until that matter was decided.  (*Id.*)  Ultimately, the State Court never ruled on the Receivership Motion, perhaps

waiting for a motion to compel arbitration that never came, and the State Action languished for nearly two years.

**D.    The Bankruptcy Action and Removal of the State Action**

On February 17, 2017, the Debtor filed its voluntary Chapter 11 case with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Action").   (Dkt. No. 1).   On February 23, 2017, the Debtor filed a timely Notice of Removal of the State Action to the United States Bankruptcy Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 157 and 1452, and Rule 9027 of the Federal Rules of Bankruptcy Procedure.   (Adv. Dkt. No. 1.) The Notice of Removal was accompanied by the complaint, filed on June 9, 2015, in the State Action, and the docket of the Supreme Court of the State of New York, County of Rockland, in accordance with Fed. R. Bankr. P. 9027(a).   On March 29, 2017, the Debtor served requests for admission and document requests, pursuant to Rules 26, 34, and 36 of the Federal Rules of Civil Procedure, on 152 Broadway (the "Requests for Admission" or "RFA").   (Ringel Decl. Ex. F.) The Requests for Admission addressed, *inter alia*, the validity of the Mortgage, the Note, and the Sham Correction Mortgage.   (*Id.*)   152 Broadway failed to timely respond to the Requests for Admission.   (Ringel Decl. ¶ 11.)

On April 28, 2017, J. Goldberger moved for a stay this proceeding and stay of discovery pending arbitration, or, in the alternative, to remand the State Action back to the State Court on abstention or equitable remand grounds.   (Adv. Dkt. No. 6.)   On May 4, 2017, counsel for J. Goldberger and 152 Broadway, Mr. Fox, emailed A. Mitchell Greene, a partner of the Debtor's counsel's firm, requesting an adjournment of "all the matters on the calendar."   (Ringel Decl. Ex. G.)   His email did not request any extension on 152 Broadway's time to respond to the Requests

for Admission, which time had already expired.  (Ringel Decl. ¶ 13.)  Further, 152 Broadway

never moved this Court for a protective order or to quash the Requests for Admission.

## ARGUMENT

### I.      THIS COURT HAS JURISDICTION OVER THE STATE ACTION.

#### A.      The Debtor Timely Filed the Notice of Removal

As a preliminary matter, the State Action was timely removed to the Bankruptcy Court on

February 23, 2017, pursuant to 28 U.S.C. §§ 157 and 1452, and Rule 9027 of the Federal Rules of

Bankruptcy Procedure, because the State Action was pending as of the date of the order for relief

(i.e., February 17, 2017) and the removal petition was filed less than ninety (90) days thereafter.[3]

#### B.      This Court Has "Related To" Jurisdiction over the State Action

Pursuant to 28 U.S.C. § 1334(b), this Court has "related to" jurisdiction over the State

Action, which will affect property of the Debtor's bankruptcy estate.  This Court's non-core

jurisdiction is broad, *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995), and extends to any

proceeding where the outcome could any "conceivable effect" on the Debtor's estate.  *In re

Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992); *Pacor, Inc. v. Higgins*, 743 F.2d 984,

994 (3d Cir. 1984).   If there is a conceivable effect on the bankruptcy estate, as there is here with

respect to resolution of the claims in the State Action, there is "related to" jurisdiction.   *Cuyahoga

Equip. Corp.*, 980 F.2d at 114.   This Court has expanded on the bounds of "related to"

jurisdiction, stating:

---

3       The Notice of Removal was filed with this Court under the Amended Standing Order of Reference.
Pursuant to 28 U.S.C. § 157(a) and the Amended Standing Order of Reference entered January 31, 2012 (*available at*
http://www.nysb.uscourts.gov/sites/default/files/m431.pdf), all cases under Title 11, United States Code, and all
proceedings under Title 11, United States Code or arising in or related to cases under Title 11, United States Code,
are referred to the bankruptcy judges for this District.   The Amended Standing Order of Reference also applies to notices
of removal pursuant to 28 U.S.C. § 1452, which shall be filed with the Clerk of the Bankruptcy Court for the Division
of the District where such civil action is pending.   The removed claim or cause of action shall be assigned as an
adversary proceeding in the Bankruptcy Court.

> an action is related to bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options, or freedom of action (either
> positively or negatively) and which in any way impacts upon
> the handling and administration of the bankrupt estate.

*Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 515-16 (Bankr. S.D.N.Y. 1999). This includes claims involving the Debtor's rights and interest in the Note and the Mortgage, as well as the State Action defendants' fraudulent conduct, as the Note and the Mortgage are property of the estate pursuant to 11 U.S.C. § 541, and the outcome of the State Action could certainly alter the Debtor's rights, liabilities, options, and freedom of action in ways that impact the handling and administration of the bankruptcy estate.

## II.    **THIS DISPUTE IS NOT SUBJECT TO ANY ARBITRATION AGREEMENT.**

### A.    **The Debtor is Not a Signatory to Any Arbitration Agreement.**

This Court should not stay the instant adversary proceeding "pending arbitration" because the Debtor is not bound to any arbitration agreement. J. Goldberger states the uncontroversial principle that arbitration clauses may be enforced in the bankruptcy context, but it is black letter law that a party will not be compelled to arbitrate absent an express agreement to do so. *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999) (in considering whether "a particular dispute is arbitrable," a court must first decide "whether the parties agreed to arbitrate"); *Transit Mix Concrete Corp. v. Local Union No. 282,* 809 F.2d 963, 967 (2d Cir. 1987) (internal quotation marks omitted) ("a party cannot be required to submit to arbitration any dispute which [it] has not agreed to submit"). While the Motion emphasizes that this Court should enforce arbitration agreements in the non-core context, the focus does not belong on whether this proceeding is non-core or core. **There is no arbitration agreement between J. Goldberger and the Debtor, so the parties did not agree to arbitrate**. This dispute does not concern the Bottling Agreement; it concerns a mortgage given to the Debtor as security for the

loan J. Goldberger received.   The Mortgage is completely separate from the Bottling Agreement and **contains no arbitration provision**, which, in part, explains why J. Goldberger went to great lengths to falsify and record a "correction mortgage" that miraculously contained an arbitration provision for a Beth Din.   The Sham Correction Mortgage is a transparent attempt to secure what the Mortgage did not provide.

In any event, ambiguity as to the question of whether the parties have agreed to arbitrate is generally resolved *in favor of the party opposing arbitration.   First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so.").   As the New York Court of Appeals has noted, "[a] party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' 'clear, explicit and unequivocal' agreement to arbitrate."   *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 374, 845 N.E.2d 1265, 812 N.Y.S.2d 435 (2006); *see also Tanbro Fabrics Corp. v. Deering Milliken, Inc.*, 35 A.D.2d 469, 472, 318 N.Y.S2d 764 (1st Dep't 1971) (internal quotation marks omitted) (stating "[a]rbitration may not be compelled unless agreed to in writing by clear language and such an agreement will not be extended by construction or implication").

In determining whether to enforce arbitration agreements, courts must apply the rules applicable to contracts and "as in any bilateral agreement *both parties must be bound or neither is bound.*"   *Riccardi v. Modern Silver Linen Supply Co., Inc.*, 45 A.D.2d 191, 193, 356 N.Y.S.2d 872 (1st Dep't 1974) (emphasis added).   Under those well-established contract rules parties can only be compelled to arbitration where they *mutually intend* to submit a dispute to arbitration and "forego access to judicial remedies."   *Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*, 78 A.D.2d 262, 268, 434 N.Y.S.2d 359 (1st Dep't 1980).   Articulating the equities underlying the rule, the New

York State Supreme Court explained that "by agreeing to arbitrate a party waives in large part many of his normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent." *Kahan Jewelry Corp. v. Venus Casting, Inc.*, 17 Misc. 3d 684, 689 (Sup. Ct. N.Y. Cnty. 2007). Here, there is absolutely no evidence that J. Goldberger and the Debtor mutually intended to submit this dispute to arbitration. The Bottling Agreement contains an arbitration provision, but the Debtor is <u>not</u> a party to that agreement. The reality is that the Debtor did not even exist when that agreement was signed and never agreed to be bound by arbitration. Thus, there is no agreement to arbitrate this dispute and J. Goldberger's argument is frivolous.

**B.      The Debtor Is Not an Alter Ego of the Signatories to the Bottling Agreement.**

While the Second Circuit has found that, in some instances, "non-signatories to an arbitration agreement may nevertheless be bound according to ordinary principles of contract and agency" *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (internal quotations omitted), the factual circumstances of this case do not support taking this unusual step to bind the Debtor, a non-party to an arbitration agreement. J. Goldberger provides **no facts** establishing agency or any other veil-piercing / alter ego theory that would subject the Debtor to an arbitration agreement it did not sign. Under New York law, a plaintiff bears a "heavy burden" to pierce the corporate veil and impose alter ego liability by showing that (1) the owners of the corporation exercised complete domination of the corporation with respect to the transactions at issue; and (2) such domination was used to commit a fraud or otherwise resulted in wrongful or inequitable consequences causing plaintiff's injury. *TNS Holdings., Inc. v. MKI Secs. Corp.*, 92 N.Y.2d 335, 339-40, 703 N.E.2d 749, 680 N.Y.S.2d 891 (1998); *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141-42, 623 N.E.2d 1157, 603 N.Y.S.2d 807

(1993).

J. Goldberger's entire theory appears to be that Judy Minster, the managing member of the Debtor, is the wife of Aron Wolcowitz, a party to the Bottling Agreement. (*See* Mot. 10-12.) That is not enough. There are no allegations in the Motion that meet the *prima facie* standard for veil piercing that would allow J. Goldberger to bind the Debtor to an agreement it was not a party to, did not agree to, and did not sign. The Motion fails to allege (and could not allege) that either Mr. Wolcowitz or Wertzberger exercised complete domination over the Debtor. Nor does it state that such domination was used to commit a fraud or otherwise resulted in wrongful or inequitable consequences.

Moreover, contrary to the specious claim in the Motion, neither Mr. Wolcowitz nor Wertzberger, the actual parties to the Bottling Agreement, assigned their rights and obligations under the Bottling Agreement to the Debtor. The Debtor (through its members) is simply the source of a loan that Wertzberger arranged and the Debtor, separate and apart from the Bottling Agreement, was given a mortgage as security for that loan. That does not bind the Debtor to the Bottling Agreement. To the extent J. Goldberger seeks to arbitrate a dispute under that agreement, he is free to make a demand to arbitrate to the signatories of the agreement, not Mr. Wolcowitz's wife or the Debtor. Indeed, Mr. Wolcowitz initially expressed his willingness to arbitrate, as reflected in Exhibit K to the Motion, as one of the signatories to the Bottling Agreement, but this has no impact on the Debtor's right to foreclose on the Mortgage.

### C.    The Mortgage Is Valid and Was Not Fraudulently Obtained.

Although J. Goldberger attempts to undermine the validity of the Mortgage (and the entire State Action) by claiming that (i) the Mortgage is "fraudulent," (ii) the dispute should be resolved in an arbitration, and (iii) this bankruptcy proceeding was filed "in bad faith" (Mot. 9-10), he

presents no evidence to support these ludicrous claims.   This action was commenced because of
the State Action defendants' bad faith conduct in filing the confessions of judgment, recording the
Sham Correction Mortgage, and then falsely telling the State Court they intended to file a motion
to compel arbitration, all which led to the State Action stalling and the Debtor being unable to pay
its debt obligations as they came due.   The Debtor encourages this Court to review the Note and
the Mortgage, which (i) is between 152 Broadway and the Debtor, (ii) is affixed with J.
Goldberger's signature, (iii) is properly notarized, and (iv) was properly recorded.   In addition,
the Mortgage was also witnessed by Barry Feerst, the Borrowers' counsel and the same counsel
who later filed the Sham Judgments.   There is no question these documents are valid.   Mere
perusal of the Sham Correction Mortgage, however, reveals its fraudulent nature, as the additional
provisions render the original Mortgage meaningless and are added in such a haphazard way that
the defendants did not even bother making the tabulation of the document consecutive, instead
starting the paragraph numbers over from (1) onward.

    In any event, 152 Broadway has already admitted the Mortgage is valid.   Under Rule
36(a)(3) of the Federal Rules of Civil Procedure, "[a] matter is admitted unless, within 30 days
after being served, the party to whom the request is directed serves on the requesting party a
written answer or objection addressed to the matter and signed by the party or its attorney."    On
March 29, 2017, after the State Action was removed to this Court, the Debtor served 152
Broadway with Requests for Admission and 152 Broadway never provided responses, timely or
otherwise.   The Requests for Admission stated, *inter alia*:

- "152 Broadway Haverstraw NY LLC, as mortgagor, and Broadway Equity

    Holdings, LLC, as mortgagee, made a mortgage dated September 4, 2014, to secure

    the payment of indebtedness in the sum of $6,000,000, mortgaging the Property to

Broadway Equity Holdings, LLC" (RFA No. 10);

- "A true, correct, and genuine copy of the Mortgage is annexed hereto as <u>Exhibit C</u>" (RFA No. 11);

- "On behalf of 152 Broadway Haverstraw NY LLC, Joseph Goldberger affixed his signature to the Mortgage" (RFA No. 12); and

- "On September 4, 2014, Joseph Goldberger was a member of 152 Broadway Haverstraw NY LLC" (RFA No. 13).

Courts do not need to order the unanswered matters admitted because admission is the "automatic result of a failure to timely respond." *DeNicola v. Frontline Asset Strategies*, 279 F.R.D. 214, 215 (E.D.N.Y. 2012); *see also* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, *on motion*, permits the admission to be withdrawn or amended."). Here, 152 Broadway has not made any motion to allow its automatic admissions to be withdrawn. The failure of 152 Broadway to answer the Requests for Admission means that the above statements are deemed admitted and the validity of the Mortgage cannot now be questioned (not that there is any basis to question it in the first place).

Further, 152 Broadway admitted that, despite the Sham Correction Mortgage stating that "[t]his mortgage is a correction mortgage to correct one legal description of mortgage in 2014-25287," the legal description was identical to the description in the Mortgage, and Aron Goldberger, who is a member with a financial interest in 152 Broadway, notarized the Sham Correction Mortgage, thereby invalidating the document.   (*See* RFA Nos. 18-26; N.Y. Exec. Law § 138 (precluding notary publics from notarizing documents in which he or she has a "financial interest").)   To the extent J. Goldberger argues that counsel for 152 Broadway (and J. Goldberger) requested an adjournment of 152 Broadway's time to respond to this simple discovery request, the

email attached to the Ringel Declaration does not bear this out and 152 Broadway never moved for

a protective order or to quash the Requests for Admission.    Filing the Motion did not stay

discovery (as that is what the present Motion requests) and, even if it did, the Motion was filed

after the time to respond to the Requests for Admission expired.    152 Broadway admitted the

validity of the Mortgage.

## III.    **MANDATORY ABSTENTION DOES NOT APPLY TO THIS ACTION.**

Under 28 U.S.C. § 1334(c)(2), federal courts must abstain from hearing a state law claim if

the party seeking mandatory abstention establishes that:

> (1) the motion to abstain was timely; (2) the action is based on a
> state law claim; (3) the action is "related to" but not "arising in"
> a bankruptcy case or "arising under" the Bankruptcy Code;
> (4) Section 1334 provides the sole basis for federal jurisdiction; (5)
> an action is commenced in state court; [and] (6) that action can be
> "timely adjudicated" in state court.

*N.Y. City Emps.' Ret. Sys. v. Ebbers (In re Worldcom, Inc. Sec. Litig.)*, 293 B.R. 308, 331

(S.D.N.Y. 2003) (citing *ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia*

*Commc'ns Corp.)*, 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002) & *Renaissance Cosmetics, Inc. v.*

*Dev. Specialists Inc.*, 277 B.R. 5, 12 (S.D.N.Y. 2002)).    Critically, if the party seeking mandatory

abstention fails to establish any of these elements, the request for mandatory abstention will not be

granted.    *N.Y. City Emps.' Ret. Sys.*, 293 B.R. at 331.

The Debtor does not challenge the first through fifth elements of the mandatory abstention

standard, but all of the evidence indicates the State Action cannot be "timely adjudicated" in the

State Court.    The Debtor's motion for a receivership sat in suspended animation for nearly two

years, with no discovery and no adjudication of any kind, as the Debtor's own debt obligations

came due, forcing the Debtor into bankruptcy.    The most recent "action" in the case occurred in

October 2015, more than a year and a half ago, when the Debtor's former counsel requested a preliminary conference on the Receivership Motion and the State Court ignored the request. Nothing is happening, and nothing will happen, in the State Action.   J. Goldberger cannot now claim that the State Court can timely adjudicate this matter when the facts reveal the opposite.

Further, J. Goldberger, in the Motion, does not even seek to have this action timely adjudicated in state court.   Instead, he is requesting a stay pending an arbitration based on an agreement under which the Debtor is not a party, did not sign, and did not agree to be bound. These are nothing more than dilatory tactics.   Lastly, if the State Action were remanded, it could lead to duplicative motion practice and repetitious discovery, as well as requiring common issues of fact and law to be resolved separately by state and federal courts.   Nothing in the Motion's arguments (or the factual record) has shown that the State Action could be both fairly and timely adjudicated by the State Court under these circumstances.   Thus, this Court should not entertain the argument that the State Court will timely adjudicate this dispute and it should deny any request for mandatory abstention.

## IV.   DEFENDANTS ARE NOT ENTITLED TO PERMISSIVE ABSTENTION OR EQUITABLE REMAND.

Further, this Court should not exercise its discretion to remand the State Action on permissive abstention or equitable remand grounds, as permitted under 28 U.S.C § 1334(c)(1) and 28 U.S.C. § 1452(b), respectively.

### A.    This Court Should Not Remand on Permissive Abstention Grounds.

This Court is permitted, in "the interest of justice, or in the interest of comity with State courts or respect for State law," to abstain "from hearing a particular proceeding . . . related to a case under title 11."  28 U.S.C.  § 1334(c)(1).   The Supreme Court, however, has stated that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given

them" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and may

abstain only for a few "extraordinary and narrow exceptions," *Id.* at 813 (citation omitted); *see*

*also Woodford v. Cmty. Action Ctr.*, 239 F.3d 517, 522 (2d Cir. 2001).   J. Goldberger has not

articulated any extraordinary or narrow exceptions, nor do any exist here.   Courts in this District

employ a multi-factor analysis to determine whether such permissive abstention is appropriate:

> (1) the effect or lack thereof on the efficient administration of the
> estate if a Court recommends abstention, (2) the extent to which
> state law issues predominate over bankruptcy issues, (3) the
> difficulty or unsettled nature of the applicable state law, (4) the
> presence of a related proceeding commenced in state court or other
> nonbankruptcy court, (5) the jurisdictional basis, if any, other
> than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness
> of the proceeding to the main bankruptcy case, (7) the substance
> rather than form of an asserted "core" proceeding, (8) the feasibility
> of severing state law claims from core bankruptcy matters to allow
> judgments to be entered in state court with enforcement left to the
> bankruptcy court, (9) the burden [on] the court's docket, (10) the
> likelihood that the commencement of the proceeding in a
> bankruptcy court involves forum shopping by one of the parties,
> (11) the existence of a right to a jury trial, and (12) the presence in
> the proceeding of nondebtor parties.

*In re Masterwear Corp.*, 241 B.R. at 520; *see also Christensen v. Tucson Estates, Inc. (In re*

*Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990).   The weight of these factors militate

against permissive abstention here.   The most important considerations in this regard are as

follows.

    First, there are no unique or unsettled questions of state law that warrant abstention based

on comity concerns.   The action involves foreclosure of the Mortgage and the defendants' fraud

in falsifying and causing the Sham Correction Mortgage to be filed.   This is not a case of first

impression where the State has an interest in hearing the matter itself.   Bankruptcy Courts are well

equipped to adjudicate issues of state law and regularly address them.   *Camofi Master LDC v.*

*United States Coal Corp.*, 527 B.R. 138, 145 (Bankr. S.D.N.Y. 2015) (noting that consideration of whether state law predominates "is a modest factor, as bankruptcy judges address matters of state law on a regular basis" (internal quotations omitted)).   Given the importance of the State Action claims to the bankruptcy estate, the factor weighs in favor of denying remand.

Second, it is hard to fathom how litigating the State Action in the State Court (where virtually nothing has happened since it was commenced) will facilitate the efficient administration of the Debtor's bankruptcy case in the Southern District of New York.   The State Action is likely to have an important economic impact on the Debtor's estate, as the Mortgage is the Debtor's single most-valuable asset.   It is undoubtedly the case that the outcome of the State Action will have serious impact on the Debtor's estate.   If a recovery can be obtained for the estate against the defendants, it would be a significant infusion of funds into the estate.   On the other hand, if the case is permitted to continually languish in the State Court, the failure to reach a final adjudication on the merits will have an important impact on the Debtor's ability to reorganize.

Third, the State Action is <u>directly related</u> to the bankruptcy case, as it was the delay tactics of the defendants in the State Action, and the State Court's indifference, that led to the Debtor being unable to pay its creditors and being forced to file for Chapter 11 protection.   The Note and the Mortgage are the Debtor's single most-valuable assets and resolution of its foreclosure and fraud claims will ultimately drive the Debtor's reorganization.   For the same reason, the Debtor cannot be accused of forum shopping, as its decision to remove the case to the Bankruptcy Court is directly tied to the failure of the State Action to progress toward any resolution.   In other words, the Debtor did not choose this forum; the State Action drove the Debtor to this forum and now the Debtor seeks resolution of its estate in one place where everything can be adjudicated expeditiously, maximizing the value of the assets the Debtor may recover.   By contrast, remand to

{00860333.DOCX;1 }                                        24

the State Court would encourage the defendants to delay, and likely guarantee no resolution of the Debtor's legitimate claims

Additionally, Defendants have not articulated any prejudice they would suffer if they were to litigate the claims in this Court, as opposed to the Supreme Court of the State of New York. Despite the age of the State Action (which evidences, at the very least, indifference by the State Court), nothing of substance has occurred in the case. There have been no decisions that have any impact on the parties and no discovery has taken place. Indeed, the only discovery issued in the State Action has been discovery issued by the Debtor since removing the action here.

Ultimately, this Court should decline to abstain pursuant to section 1334(c)(1), as remand will impede the ability of the Debtor to reorganize and will deny the Debtor the efficient and expeditious resolution of this litigation.

**B.      This Court Should Not Remand on Equitable Remand Grounds.**

Last, J. Goldberger urges a remand under the equitable remand provision, 28 U.S.C. 1452(b). Under this provision, "the court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Though the factors for equitable remand are articulated in slightly different fashion, the analysis is effectively the same as the multi-factor analysis under section 1334(c)(1):

> (A) the effect on the efficient administration of the bankruptcy estate; (B) the extent to which issues of state law predominate; (C) the difficulty or unsettled nature of the applicable state law; (D) comity; (E) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (F) the existence of the right to a jury trial; and (G) prejudice to the involuntarily removed defendant(s),

*Camofi Master LDC*, 527 B.R. at 143. Courts may also consider two additional factors: the "duplicative and uneconomical use of judicial resources" and the "lessened possibility of

inconsistent results." *Nemsa Establishment v. Viral Testing Sys. Corp.*, 1995 U.S. Dist. LEXIS

11650, at *22 (S.D.N.Y. 1995).   Regardless, though, for the same reasons as those articulated

above, this Court should decline to remand on equitable grounds.

## CONCLUSION

Respectfully, for all of the foregoing reasons, this Court should deny the Motion in its

entirety.

Dated:  New York, New York
        May 30, 2017

ROBINSON BROG LEINWAND GREENE
    GENOVESE & GLUCK P.C.

By:   /s/ Fred B. Ringel
        Fred B. Ringel, Esq.
        Nicholas M. Menasché, Esq.

875 Third Avenue, 9th Floor
New York, New York   10022
Telephone: (212) 603-6300
Facsimile:  (212) 956-2164

*Attorneys for the Debtor*