UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
IN RE:                                                                    Chapter 11

BROADWAY EQUITY HOLDINGS LLC,                    Case No. 17-22242 (RDD)

                                    Debtor.
----------------------------------------------------------X
BROADWAY EQUITY HOLDINGS LLC,                    Adv. Case No. 17-08215 (RDD)

                                    Plaintiff,

        -    against    -

152 BROADWAY HAVERSTRAW
NY LLC, ET AL.,

                                    Defendants.
----------------------------------------------------------X

## REPLY MEMORANDUM OF LAW OF SELLER-DEFENDANTS


**LEO FOX, ESQ.**
**ATTORNEY FOR**
**Defendants 152 Broadway Haverstraw NY LLC,**
**Blue Beverage Group, Inc., Joseph Goldberger**
**630 THIRD AVENUE**
**NEW YORK, NEW YORK 10017**
**(212) 867-9595**

1

# TABLE OF CONTENTS

**Pages**

Table of Authorities                                                      3

Preliminary Statement                                                    6

Facts                                                                     6

Point I
THIS COURT LACKS SUBJECT MATTER JURISDICTION                             12

Point II

THE PARTIES ARE BOUND BY THE ARBITRATION CLAUSE
PARAGRAPH 52  OF THE AGREEMENT                                           13

A. The law favors arbitration                                           13

B. Non Parties to the Arbitration Clause May be Found to be Bound by the
Arbitration Agreement                                                    15

C. The Defendants preserved their rights to seek arbitration            16

Point III
THE MORTGAGE ASSET OF THE DEBTOR IS A FRAUDULENT
MORTGAGE AND IS VOID                                                     17

Point IV
THIS CHAPTER 11 CASE SHOULD BE DISMISSED AS HAVING
BEEN FILED IN BAD FAITH                                                  19

Conclusion                                                               21

| Cases | Pages |
|---|---|
| American Home Assurance Co. v. Fremont Indemn Co, | |
| 1992 W.L. 135808 (Dist.S.D.N.Y. 1992) aff'd 983 F.2d 1048 (2d Cir 1992) | 16 |
| C-TC 9th Avenue Partnership v. Norton Company, 113 F.3d 1304 (2d Cir. 1997) | 19-20 |
| Carcich v. Rederi A/B Nordie, 389 F.2d 692  (2d Cir.1968) | 16 |
| Com–Tech Assoc. v. Computer Assoc. Int'l, Inc., 938 F.2d 1574 (2d Cir.1991) | 16 |
| Deloitte Noraudit A/S. v. Deloitte Haskins & Sells U.S. and J., 9 F.3d 1060 (2d Cir. 1993) | 15 |
| Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc., 2 F.Supp.2d 516 (Dist.Ct. S.D.N.Y.1998) | 12 |
| ECOR Solutions Inc. Malcolm Pirnie, 2009 W.L. 2424553 (Dist.Ct. N.D.N.Y. 2009) | 13 |
| Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840 (2d Cir.1987) | 14 |
| In Re Bousa, Inc., 1993 W.L. 78019 (Dist. S.D.N.Y. 1993) | 16 |
| Martens v. Smith Barney, 181 F.R.D. 243 (Dist.Ct. S.D.N.Y.  1998) | 12 |
| Martinez v. Estate of Carney, 40 Misc3d 1219(A), 977 N.Y.S.2d 67, 2013 N.Y.Slip.Op. 51236 (U) (Sup.Bronx, 2013) | 19 |
| Mastrobueno v. Shearson Leham Hutton Inc, 514 US 52, 115 S.Ct. 1212, 131  L.Ed. 76 (1995) | 13 |
| Matter of Estate of William A.Barrie,  134 Misc.2d 440, 511 N.Y.S.2d 524 (Surr. Ct. Nassau County 1987) | 19 |

Offshore Exploration and Production v. Morgan Stanley Private Bank, N.A.,
986 F.Supp.2d 308, (Dist.Ct.S.D.N.Y. 2013)                                    14

Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72 (2d Cir.1998)                   14

Pleasant Pointe Apartments Ltd. v. Kentucky Hous.Corp.
139 B.R. 828 (W.D.Ky. 1992)                                                  19-20

Refco, Inc. Securities Litigation v. Grant Thornton, 2008 W.L. 2185676
(S.D.N.Y. 2008)                                                               16

Rush v. Oppenheimer & Co., 779 F.2d 885  (2d Cir.1985)                        16

Ryan, Beck& Co. v. Fakih, 268 F.Supp.2d 210
(Dist.Ct. E.D.N.Y. 2003)                                                     15-16

State of N.Y. v. Oneida Indian Nation of N.Y., 90 F.3d 58 (2d Cir.1996)       12

Sumkin v Hammonds, 177 Misc.2d 1006, 677 N.Y.S.2d 734

 (Dist.Ct.Nassau County 1998)                                               17-19

Wells Fargo Bank v. London Steam-Ship Owners , 408 F.Supp. 626

(Dist.Ct.S.D.N.Y. 1976)                                                       15

WorldCrisa Corp., 129 F.3d 71 (2d Cir 1997)                                   13


Statutes

N.Y. Exec. Law section 135                                            18-19

N.Y. RPAPL § 301(2)                                                   18-19

Treatises

23 Carmody-Wait 2d § 141:152                                            16

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted in Reply to the Opposition of the Debtor to the motion of the Sellers-Defendants to compel arbitration.

## FACTS

The opposition extraordinarily discloses for the first time that the "Buyers" i.e. Joel Wertzberger a/k/a Joel Wercberger ("Wercberger") and Aron/Jacob/Jack Walkowitz a/k/a Walcowitz ("Jack") "assembled" (Debtor Memorandum page 4)[1] or "arranged" (Minster Declaration paragraph 3) for the Lenders to "act" as a bank and such Lenders began advancing funds in early 2013 (Wercberger Declaration paragraph 9, Minster Declaration, page 3, Debtor Memorandum, page 4). The Debtor alleges that this secured lending was authorized under Paragraph 17 of the Agreement (Defendant's Motion to Compel Arbitration, Exhibit E).[2] All of these loans were made after the Agreement was executed on December 26, 2014. The Buyers, as veritable strangers to the bottling operation without any visible corporate authority could only authorize the making of these loans under the provisions of the Agreement which required consent by the Sellers. But in any event the lenders were aware that these loans were made subject to the provisions of the Agreement which provided for a very broad arbitration clause

---

[1] The names and titles used in the main motion are used herein.

[2] However, this reading of the Agreement fails to explain why these private individuals may "act" as the bank, particularly where the Agreement itself distinguishes between private lending as opposed to bank lending (Paragraph 18 of the Agreement). Nor does that interpretation accurately lay out the limitations under the Agreement that the Buyers were not permitted to borrow at all without consent of the Sellers as set out in paragraphs 23, 33, 35, 37, and 38. In addition, paragraph 17 of the Agreement cited by the Buyers requires the Buyers to pay back these loans, not the Sellers (section 17(1) and (2)).

6

under paragraph 52. These lenders are composed of individuals and entities "some in which [Joel Wertzberger] have a financial interest to act as the Bank" (Declaration of Joel Wertzbeger, paragraph 6).

These lenders, having opted to obtain the benefits of making an interest free loan under the purported authority granted to the Buyers, are bound by all the terms of that Agreement.

Similarly, in September, 2014, according to the Debtor's submissions, these lenders assigned their claims to the Debtor in exchange for membership interests in the Debtor[3], with Judy Minster, managing agent for the Debtor, the wife of Aron/Jacob/Jack Walkowitz a/k/a Walcowitz ("Jack") (See Declaration of Leo Fox), receiving 9% of the membership interests for an undisclosed amount of money, perhaps her fee for her husband's and Joel Wertzberger's "assembling" and "arranging" for the loans. Significantly, the assignment of these claims to the Debtor were likewise subject to all the provisions including the arbitration provisions of the Agreement for reasons stated above. The Debtor cannot achieve any better rights than the Lenders particularly where the same individuals, the Buyers and the Lenders, who include entities in which the Buyers' financial interests are involved are on both sides of the transaction.

It should be noted that at the meetings that were held in August, 2014, there were discussions about a transition and the amounts which the Buyers would be entitled to receive (Menczer Declaration, paragraph 1). However, the Buyers never produced any records to substantiate their advances. There was no agreement on this issue. (Id.) The Sellers and Buyers agreed to arbitrate these issues before the Rabbinical Beth Din (id.) The Sellers were not even

---

[3] The documents attached to the Minster Declaration reflect an assignment of claims but no issuance of membership interests in the Debtor.

aware that the Buyers had purported to "borrow" funds from third parties and to promise to secure such loans with the assets. Id.

The arbitration clause in the Agreement is extremely broad. The operative provision requires arbitration "in every disagreement and dispute that may arise between the parties with anything related to this sale and this contract.

The Debtor does not contend that the Lenders ever objected to any of the provisions of the Agreement including the arbitration provisions at any time.  The law is clear that non parties to an agreement calling for arbitration are bound to such arbitration provisions where they fail to object. These lenders, all of whom are closely related or entities in which the Buyers have a financial interest (See Wertzberger Declaration, paragraph 6), may be bound to the arbitration provisions of the Agreement. Contrary to the Debtor's claims, under the facts of this case, there was a presumption that the claims alleged in the Adversary Proceeding are subject to the arbitration agreement where these claims touch matters covered by the agreements, whatever the legal labels attached to them.

The Plaintiff's suggestion that the Defendants' attorney did not adequately press the arbitration demand and thereby made it stale is simply incorrect. Defendants' attorneys raised the issue at the initial hearing, cross-moved for arbitration in the opposition to the motion papers to the Receiver motion and interposed the defense of arbitration in its Answer. The underlying documents concerning the arbitration issues were submitted to the State Court. These actions were made literally simultaneously with the actions by the Debtor in connection with the original commencement of the receiver motion. It is clear that Defendants did not waive but in fact vigorously asserted their rights to arbitration.

8

These recent disclosures establish that the purported fraudulent mortgage is invalid not only based on a fraudulent signature but also based upon the fact that the notary Aron/Jacob/ Jack Walkowitz held a direct and financial interest in the mortgage purportedly executed by Goldberger. Such an instrument is invalid as a matter of law and cannot be used as a basis for any foreclosure.

Furthermore, based upon these facts, the Debtor's filing of this Chapter 11 case is a bad faith filing. Here the Debtor and Lenders allege that the litigation claims were transferred to the Debtor for the purpose of the Debtor's commencement of litigation.  When it appeared that the litigation was not going the way that the Debtor wished, the Debtor determined to file this Chapter 11 case and to remove the state court action to this Court. The transfer to the Debtor and the filing of this Chapter 11 case are litigation tactics to try the dispute in this Court which the Debtor believes to be more favorable.   This Debtor has already admitted that it is unable to propose a meaningful plan of reorganization unless the litigation is resolved in the Debtor's favor (See Local Rule Affidavit of Judy Minster).

The sole asset of this case is this litigation. There are few creditors other than one insider (and the claims held by Sellers at this point). There is no income to pay for administration and other expenses. All of these factors denote a bad faith filing which should be dismissed on these grounds.

It is also clear that there does not exist any subject matter jurisdiction in this Court to hear an Adversary Proceeding commenced by a Debtor to foreclose on a mortgage purportedly held by such Debtor against a non Debtor third party (152 Broadway Haverstraw NY LLC) while at the same time seeking to invalidate liens held by non Debtor third parties (Defendants Toby Weinberg, MFT Holdings LLC, Jeno Guttman, and Rivke Goldberger) on the assets of a non

9

Debtor third party (152 Broadway Haverstraw NY LLC). These liens arose from obligations incurred by 152 Broadway Haverstraw NY LLC during the course of its business and were advanced when these creditors requested payment for these amounts. 152 Broadway has attached records and checks reflecting these actual obligations, unlike the case of the Lenders and the Buyers who have failed to present a single piece of documentation to establish that they are owed any sums much less the $6 million purportedly advanced by such Lenders. The Declaration of the accountants for 152 Broadway confirms these obligations and that its principals have full right to pay and secure by liens if necessary for any obligations which 152 Broadway has incurred.

State Court Action

On or about June, 2015, the Debtor commenced the foreclosure action by Order to Show Cause for the appointment of a Receiver (Ringel Declaration). At that hearing, Defendants' counsel  appeared in state court on the request of Plaintiff's counsel for an ex parte appointment of a receiver and requested an extension until August 3, 2015 to respond to the papers based upon the Jewish holiday as well as Plaintiff's consideration of the parties going to arbitration (Fox Declaration, hearings, transcripts, pages 3, 17-18). Defendants' counsel asserted the arbitration issues  (Ringle Declaration, Exhibit C, Transcripts pages 11, 14 and 15). The Defendants' counsel also asserted a demand for arbitration in his Affirmation dated August 23, 2015, paragraph 24-29 (Seller's main motion herein, Exhibit I).

On August 3, 2015, the Defendants interposed an Answer which alleged arbitration as the first affirmative defense (Fox Declaration, Exhibit J). The Answer also denied the allegations that there existed a valid note or mortgage and that such note and mortgage was fraudulently obtained and recorded (Fox Declaration, paragraphs 6, 8, 9 and 10).

On September 16, 2015, the Plaintiff moved to substitute the Estate of Jeno Guttman for Defendant Jeno Guttman (State Court Docket sheet No. 89, Exhibit A to Ringle Declaration, Fox Declaration). On January 20, 2016, the Court granted such motion without opposition and directed the Plaintiff to settle an Order (Fox Declaration). The Plaintiff failed to settle an Order at any time prior to the filing of this Bankruptcy petition a year later in February, 2017 (Fox Declaration).

There are remedies and alternatives available for Plaintiff if the plaintiff is dissatisfied with the speed of any State Supreme Court Justice undertaking in resolving any motion, including addressing the Court, Court administration, or undertaking legal action (Fox Declaration). The record does not reflect that Plaintiff undertook any of these actions. Id. There does not appear to be any records or documents that substantiate Debtor's claims that it was financially strapped or was risking the loss of its non-existent assets. Id. Instead, Plaintiff proceeded to file its Chapter 11 Petition Id.

Literally simultaneously, the Debtor filed its Notice of Removal of the State Court action but failed to timely serve such Notice of Removal on Joseph Goldberger as a party (Fox Declaration).

On April 28, 2017, the Defendants timely objected and moved for a protective order with respect to the First Set of Requests for Admissions and Document Requests, seeking a stay of all discovery pending this Court's determination of the demand for arbitration.

All of the Defendants other than taxing authorities who are owed nothing or minimal amounts have agreed to proceed with arbitration as reflected on the letters submitted to this Court by the attorneys for Ryvkie Goldberger and the Estate of Jeno Guttman as well as by MFT

Holdings, Joseph Menczer and Toby Weinberger, based on two letters by such attorneys (Leo Fox Declaration).

The above demonstrates that this Court lacks subject matter jurisdiction, this Debtor is bound by the arbitration clauses of the Agreement, the Debtor's mortgage and note are fraudulent and void, and this entire Chapter 11 case was filed in bad faith which warrants the dismissal of the case.


ARGUMENT

POINT I

THIS COURT LACKS SUBJECT MATTER JURISDICTION

Respectfully, this Court does not have subject matter jurisdiction because the Court does not hold 'related-to jurisdiction" for the claims which seek to invalidate a third party's liens against a third party non-debtor's assets. Further, the sole claim that exists on the part of the Debtor against the Defendants is subject to an arbitration clause.

In Martens v. Smith Barney, 181 F.R.D. 243, 251 (Dist.Ct.S.D.N.Y. 1998), the Court stated that:

> "A valid, applicable compulsory arbitration provision would eliminate subject matter jurisdiction, barring plaintiffs' suit from any non-arbitral forum. *Compare State of N.Y. v. Oneida Indian Nation of N.Y.,* 90 F.3d 58 (2d Cir.1996) (finding subject matter jurisdiction where claim fell within exception to arbitration agreement) *with Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc.,* 2 F.Supp.2d 516 (S.D.N.Y.1998) (finding no subject matter jurisdiction where arbitration agreement was valid and applicable to plaintiff's claim)."

Here, the Defendants have established without question that the Debtor, and its predecessor Lenders were all subject to the Agreement and the arbitration clause set out in that

Agreement.  There is no justiciable controversy or dispute that is left for this Court to hear and determine. Accordingly, this Court should refer this matter to the arbitration which the parties are bound to by the Agreement.

## POINT II

**THE PARTIES ARE BOUND BY THE ARBITRATION CLAUSE PARAGRAPH 52 OF THE AGREEMENT**

A. The law favors arbitration

Paragraph 52 of the Agreement broadly applies the arbitration clause to "every disagreement and dispute that may arise between the parties with anything related to this sale and this contract…"

The Supreme Court has "clearly stated that when construing arbitration documents, they "should be read [together] to give effect to all [the] provisions and to render them consistent with each other. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U .S. 52, 63 (1995) (citations omitted). " ECOR Solutions Inc. Malcolm Pirnie, 2009 W.L. 2424553 at 3 (Dist.Ct.N.D.N.Y. 2009). "Thus, when a party's interpretation "sets up ... two clauses in conflict with one another: one foreclosing [arbitration], the other allowing [it, the] interpretation is untenable." (citing Mastrobueno, 514 U.S. at 54)

Furthermore, "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. [Additionally, d]oubts should be resolved in favor of coverage. *WorldCrisa Corp.,* 129 F.3d at 74." (brackets supplied) ECOR, 2009 W.L. 2424553  at 4.

Likewise, in <u>Offshore Exploration and Production v. Morgan Stanley Private Bank, N.A.,</u>
986 F.Supp.2d 308, 319-320 (Dist.Ct.S.D.N.Y. 2013), the District Court explained that "if the
forum selection and arbitration clauses can be harmonized in a way "that permits the [a]rbitration
[c]lause to remain in effect," that reading must prevail."

In <u>Oldroyd v. Elmira Sav. Bank, FSB,</u> 134 F.3d 72, 76 (2d Cir.1998), the Second Circuit
held that using language such as "[a]ny dispute, controversy or claim arising under or in
connection with [Oldroyd's employment agreement]," within an arbitration agreement is "the
prototypical broad arbitration provision" and thus, establishes a presumption of arbitrability."

Even "in the absence of the presumption, "[i]f the allegations underlying the claims
'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated,
whatever the legal labels attached to them." <u>Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,</u> 815 F.2d
<u>840, 846 (2d Cir.1987)</u> (citations omitted)." <u>Oldroyd</u>, 130 F.3d at 77. Although the parties
disputed whether the relevance of the evidence to be admitted at the hearing was within the reach
of the arbitration clause, the Court considered the circumstances at the time and viewed the issue
of evidence to be included implicitly as part of the arbitration, using principles of common sense
and reason.  Thus   "[t]he relevance of evidence to be admitted at the hearing was clearly
contemplated in the agreements.  <u>Id.</u>

It is therefore clear that in the case before this Court, the arbitration clause is broad and
directly conflicts with the terms of the Mortgage Note and Mortgage unless there is a way to
harmonize the provisions. However, any harmonizing should take place in the arbitration.  Here,
in particular, it defies common sense that these outside lenders would agree to a zero interest rate
loan without having examined the bona fides of the buyers, the existence of the authority to

borrow such funds and their right to assert liens on property which was not even owned by the Buyers in 2013 and 2014.

B. Non Parties to the Arbitration Clause May be Found to be Bound by the Arbitration Agreement

Furthermore, non parties to the arbitration agreement such as the Lenders and their assignee, the Debtor, who have accepted benefits of that agreement and who have never objected to the agreement are bound to the arbitration clause in that agreement.

In Deloitte Noraudit A/S. v. Deloitte Haskins & Sells U.S. and J., 9 F.3d 1060 (2d Cir. 1993), the Second Circuit, rejected the contention that a non party to the litigation or Agreement was not bound by the arbitration provisions of that Agreement. The Court stated that Noraudit had failed to object to the Agreement when it received it and moreover, accepted the benefits of that Agreement. 9 F.3d at 1064.

Furthermore, non signatory successors or assignees are bound by arbitration agreements. In Wells Fargo Bank v. London Steam-Ship Owners, 408 F.Supp. 626 (Dist.Ct. S.D.N.Y. 1976). The Southern District held that a mortgage loss payee was bound by the insurance policy's arbitration clause, either as "member" or as a "successor' of the original insured or on the principle that the holder of such an open loss payee clause is accorded no greater rights than those of its insured and is bound by the conditions in the contract. It has been noted that "a non signatory or non party to a contract containing an arbitration clause may come to be governed by such a provision." 408 F.Supp at 629.

Likewise in Ryan, Beck & Co. v. Fakih, 268 F.Supp.2d 210 (Dist.Ct.E.D.N.Y. 2003), using the Deloitte rationale, the Eastern District Court held that under a theory of estoppel, a non

15

signatory to an agreement contain an arbitration clause "may be compelled to arbitrate with a signatory where the non signatory knowingly accepts benefits derived directly from the agreement…[citations omitted]."  See also  Refco, Inc. Securities Litigation v. Grant Thornton, 2008 W.L. 2185676  (Dist.Ct. S.D.N.Y. 2008).

C. The Defendants preserved their rights to seek arbitration.

At each stage, early in the State Court case and in this Adversary Proceeding, the Defendants vigorously asserted their rights to seek arbitration, contrary to Plaintiff-Debtor's claims that they had failed to seek arbitration.

Thus in In Re Bousa , 1993 W.L. 78019 at 4 (S.D.N.Y. 1993), the Court stressed the long-standing principle that:

> "Waiver is not to be lightly inferred." Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985). The party opposing a motion to arbitrate must show that it has been prejudiced by the movant's actions. See Com-Tech Assoc. v. Computer Assoc.Int'l , 938 F.2d 1574, 1576 (2d Cir.1991) ("Mere delay in seeking arbitration, absent  prejudice to the opposing party, does not constitute waiver"); American Home Assurance Co v. Fremont Indemn. Co., No. 88 Civ. 3394, 1992 WL 135809 (S.D.N.Y. June 1, 1992), aff'd, American Home Assurance Co. v. Belvedere ., 983 F.2d 1048 (2d Cir.1992). Indeed, in the absence of an express waiver, it seems well settled that in order to defeat a motion to compel arbitration it is not enough to claim that the moving party delayed in making the motion, or to prove that its conduct was inconsistent with the intent to arbitrate, or to cite principles of judicial economy or efficiency. Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968) (in view of "overriding federal policy favoring arbitration," "it is not 'inconsistency,' but the presence or absence of prejudice which is determinative of the issue" of waiver of the right to arbitration)."

Plaintiff argues incorrectly that Defendant failed to make a separate motion to compel arbitration  It is well-established that where a party asserts the right to arbitrate as an affirmative defense, there is no waiver. 23 Carmody-Wait 2d § 141:152

Thus, from the outset of this litigation, Defendants vigorously and repeatedly asserted their arbitration rights. There has been no waiver of Defendants' right to arbitration.


POINT III


THE MORTGAGE ASSET OF THE DEBTOR IS A FRAUDULENT MORTGAGE AND IS VOID


The Debtor's entire asset consisting of the Mortgage Note and Mortgage is defective as being notarized by a person with pecuniary interests in the transaction being notarized.  Absent a duly notarized mortgage, the mortgage is void and unenforceable.

The Debtor obtained this fraudulent Mortgage and Note based on an assignment of loans purportedly made by the Lenders. The managing agent of the Debtor, the holder of the Mortgage and the Note, is a holder of a 9% membership interest in the Debtor. She is also the wife of Aron/Jacob/Jack Walkowitz, the notary (Fox Declaration, Chapter 11 Statement of Financial Affairs, paragraph 28). Thus, Aron/Jacob/Jack Walkowitz notarized an instrument in which his wife held a 9% interest, with the remaining 91% interest held by individuals and entities which he assembled  and arranged (Minster Declaration, paragraph 3) and in which his partner Joel Wertzberger held "a financial interest" (Wertzberger Declaration,  par.6) Accordingly, the Mortgage and the Note are void based on the principles enunciated by New York State and case law.

In <u>Sumkin v Hammonds</u>, 177 Misc.2d 1006, 677 N.Y.S.2d 734 (Dist.Ct.Nassau County 1998), the Court "reviewed the booklets produced by the office of the Secretary of State in two

administrations, to wit: Basil A. Paterson of the Governor Hugh L. Carey years (hereinafter

referred to as "Paterson") and Gail S. Shaffer of the Gov. Mario M. Cuomo years (hereinafter

"Shaffer") and both of which make references to Attorney General opinions (some undated).

Concerning the issue of public policy, the Forward in Paterson states:

> "A notary public is a public official and as such assumes a position of trust which
> demands a high degree of conscientious public service. A notary public must carry out
> his/her duties and functions only in accordance with the law. This is vital, if the public
> interest is to be served."

> In both Paterson & Shaffer, there is the same language: "To state the rule broadly: if the
> notary is a party to or directly and pecuniarily interested in the transaction, the person is
> not capable of acting in that case."

> The Shaffer booklet defines an "affidavit" as a signed statement duly signed before a
> notary "as an officer authorized to administer oaths" and makes a specific reference to the
> certification by a notary of a document for its acceptance by a foreign consulate. In this,
> indicating that such practice was not permitted, the booklet cites an (undated) opinion of
> the Attorney General (believed to have been rendered in the 1930's) stating that:
> While in this individual case there may be no indication of deceiving nor any deception,
> nevertheless, it is a practice which may become subject to deception and therefore the
> requirements as laid down by the law for the conduct of notaries should be most strictly
> enforced." 177 Misc.2d at 1008-1009.

> Furthermore:

> "In section 135 of the Executive Law, the powers and duties of a notary public, in
> general, are set forth. A specific provision therein states that a notary who is also an
> attorney duly admitted to practice in this state "... may, in his discretion, administer an
> oath or affirmation to or take the affidavit or acknowledgment of his client in respect of
> any matter, claim, action or proceeding." It occurs to this court that the Legislature, by
> inserting this specific exception, would have clearly intended to restrict a similar practice
> by a non-attorney notary public." Id at 1009.

The Sumkin Court found that where the landlord, who notarized an affidavit of service in

a summary proceeding in which he had a pecuniary interest, such "affidavit of service…is a

nullity, by reason of the fact that such affidavit was notarized by petitioner, who is a party to the

proceeding and has a direct pecuniary interest therein, which is and/or should be prohibited as a

matter of public policy. Having so found, in the absence of a valid affidavit of service, this court lacks jurisdiction over the person of the respondent." Id at 1009.

In Martinez v. Estate of Carney, 40 Misc3d 1219(A), 977 N.Y.S.2d 67, 2013 N.Y.Slip.Op. 51236 (U) (Sup.Bronx 2013), a notary/attorney, who had a financial interest in the transaction, notarized the relevant documents, admitting that he "prepared the "loan documents and the Quitclaim deed and related transfer tax returns …[as] [a]ll of the loan documents were necessary to protect [his] interests as lender" .Furthermore, he also notarized a $50,000.00 mortgage, and Quitclaim Deed. The Court stated that the "notarization of the mortgage, promissory note, and Deed, raises ethical and legal concerns, since he had an economic interest in the transactions; and Katz' actions—violative of Notary Public License Law and RPAPL § 301(2)—make those documents void. *See Matter of Estate of William A. Barrie,* 134 Misc.2d 440, 511 N.Y.S.2d 524 (Surrogate's Court, Nassau County 1987)." 2013 N.Y.Slip.Op. 51236 (U) at 6.

The above authority establishes that the notary's notarization is invalid whether or not the notary had fraudulent intent. Accordingly, the mortgage herein must be invalidated . Consequently there exists no valid mortgage on the property.

POINT IV

THIS CHAPTER 11 CASE SHOULD BE DISMISSED AS HAVING BEEN FILED IN BAD FAITH

In C-TC 9th Avenue Partnership v. Norton Company, 113 F3d 1304, 1311 (2d Cir. 1997), the Second Circuit, following *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.,* 139

19

B.R. 828 (W.D.Ky.1992), set forth the factors to be considered in determining whether a bankruptcy filing is one of bad faith:

"(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees."

An examination of the above factors (other than the third factor) strongly militates in favor of this Court dismissing the instant case on the grounds of bad faith as the Debtor has one asset, few unsecured creditors, this is essentially a two party dispute, the case is the subject of a pending state court action, the debtor has little cash flow, cannot meet current expenses and has no employees. The Debtor seeks to avoid an arbitration which it had agreed to undertake at the execution of the Agreement. This refusal designed to frustrate and delay the efforts of the Defendants to finally resolve these claims. The Debtor does not appear to have any cash or assets to pay expenses.

Accordingly, this case should be dismissed.

CONCLUSION

The litigation herein should be referred to the arbitration procedures contemplated in the Agreement. Based on the foregoing, it is respectfully requested that this Court stay the Adversary Proceeding and any discovery pending determination by the arbitration, alternatively this Court should remand this Adversary Proceeding back to New York State Supreme Court for disposition by the New York State Supreme Court and grant such other relief as it deems reasonable and appropriate

Dated:  New York, New York
        June 4, 2017


                    s/ Leo Fox


                    _____
                    LEO FOX, ESQ. (LF-1947)
                    ATTORNEY FOR
                    Defendants 152 Broadway Haverstraw NY LLC,
                    Blue Beverage Group, Inc., Joseph Goldberger
                    630 Third Avenue
                    New York, New York 10017
                    (212) 867-9595