Jeffrey Fleischmann
The Law Office of Jeffrey Fleischmann PC
150 Broadway, Suite 900
New York, New York 10038
Tel: (646) 657-9623
jf@lawjf.com
*Attorneys for Defendants and*
*Counterclaim Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
In re:

BROADWAY EQUITY HOLDINGS LLC,

                                  Debtor.

**HEARING DATE AND TIME:**
May 1, 2019 10:00 a.m.

Chapter 11

Case No. 17-22242 (RDD)

------------------------------------------------------------------X
BROADWAY EQUITY HOLDINGS LLC,

                                  Plaintiff,

    -against-

152 BROADWAY HAVERSTRAW NY LLC, BLUE BEVERAGE GROUP, INC., JOSEPH GOLDBERGER, TOBY WEINBERGER, MFT HOLDINGS LLC, ESTATE OF JENO GUTTMAN, RYVKIE GOLDBERGER, LAND TRACK TITLE AGENCY, LLC, VILLAGE OF HAVERSTRAW RECEIVER OF TAXES, COMMISSIONER OF FINANCE OF THE COUNTY OF ROCKLAND, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, "JOHN DOE NO. 1" through "JOHN DOE NO. 10", and said names being fictitious, it being the intention of Plaintiff to designate all persons, partnerships, corporations, or other entities in possession of the premises, as tenant or otherwise any/or all persons or entities having or claiming an interest in said premises,

                                  Defendants.

Adversary Case No. 17-8215 (RDD)

------------------------------------------------------------------X

BLUE BEVERAGE GROUP, INC., JOSEPH
GOLDBERGER and JOSEPH MENCZER,

                Counterclaim Plaintiffs,

              - against –

BROADWAY EQUITY HOLDINGS LLC,
JOEL WERTZBERGER a/k/a JOEL
WURTZBERGER, ARON WOLCOWITZ
a/k/a ARON JACOB WOLKOWITZ a/k/a
JACK WALKOWITZ and JUDY MINSTER,

                Counterclaim Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MOTION FOR SPOLIATION SANCTIONS

Defendants 152 Broadway Haverstraw NY LLC ("152 Broadway"), Blue Beverage Group, Inc. ("Blue Beverage"), Joseph Goldberger ("Goldberger"), Toby Weinberger ("Weinberger"), MFT Holdings LLC ("MFT"), Estate of Jeno Guttman ("Guttman Estate"), and Ryvkie Goldberger ("Ryvkie")(collectively "defendants") and counterclaim plaintiff and Joseph Menczer ("Menczer") respectfully submit this motion for an order: (1) striking the complaint filed by plaintiff Broadway Equity Holdings LLC("BEH") and the reply to counterclaims and affirmative defenses filed by BEH, Joel Wertzberger ("Wertzberger"), Aron Wolcowitz ("Wolcowitz"), and Judy Minster-Wolcowitz ("Minster", together with Wolcowitz, Wertzberger, and BEH, the "Wertzberger Parties"), or in the alternative, (2) precluding the Wertzberger Parties from using or referring the note and side agreement for any purpose in this action, or in the alternative, (3) making an adverse inference that the note and side agreement were not signed, and are a forgery.

**Preliminary Statement**

1.     A foreclosure action cannot be maintained in the absence of a valid note. Under black letter New York law, a debt may not be proven by alternative means in the context of a foreclosure action. As set forth below, the alleged note that serves as the basis for the foreclosure

action mysteriously disappeared days after defendants submitted their handwriting exemplars at plaintiff's request. Several months later, a side agreement that was supposedly executed at same time as the note also disappeared. No less an authority than plaintiff's own expert admitted that it is not possible to authenticate a photo copy for the simple reason that anyone can do a simple copy and paste job. The Wertzberger Parties themselves provided incoherent and contradictory testimony with respect to the mysterious and conveniently timed disappearance of the original Note. Thus, spoliation sanctions are the only method of dealing with the incredibly timed disappearance of the note and side agreement.

2. Defendants previously wrote the Court seeking permission to make this motion. The Court indicated that permission was not necessary, but that its inclination was that this matter could be dealt with in the context of the trial. Accordingly, this motion is filed in advance of the trial, scheduled for May 1, 2019.

**Relevant Background**

3. Defendants have maintained that the signatures and notarizations on the purported loan documents upon which plaintiff relies in seeking foreclosure were fraudulent since learning of their existence, and have maintained this defense since this action was filed in State Court on June 9, 2015. The forgery issue is fully identified in the counterclaims and defendants' responses to discovery demands and written communications with this Court, and has been discussed during several conferences before the Court. Specific to the production of the original Note with original signatures, opposing counsel has represented that the document would be produced for inspection and analysis by defendants' handwriting expert during the expert discovery period. At no time throughout these proceedings had counsel for plaintiff or the third-party defendants ever suggested that there would be any issue or any problem with providing this original document for inspection.

4. On February 27, 2018, plaintiff's counsel requested that the Court set a deadline for which to provide exemplars of the original signatures of counterclaim plaintiffs Joseph Goldberger and Joseph Menczer in order to permit Broadway Equity to do its own testing. Mr. Ringel specifically requested exemplars of Mr. Menczer's signature based upon his purported signature appearing on the alleged note—Mr. Menczer's signature does not appear on the alleged mortgage[1]. Mr. Ringel further noted that he required "original signatures" for the handwriting expert to conduct an analysis. Mr. Ringel further stated that: "I've been through this a number of times with these types of forensic handwriting experts. You need everything from when the pen was lifted, which is something that's difficult to tell in a signature that's produced by a photocopy, whether it's -- there are all sorts of issues, I'm not an expert, I don't know, but every time I have spoken, and I have three or four that I have used, they need original signatures". See **Exhibit C**, p. 29.

5. Indeed, throughout the course of the litigation, plaintiff's counsel represented that the purported original note and mortgage would be made available for testing. In fact, as recently as March of this year, counsel for plaintiff provided his comments to a stipulation regarding the exchange of exemplars wherein plaintiff represented that it "will make available to counsel for defendants/counterclaim plaintiffs for review, analysis and non-destructive testing, the originals of certain documents…which plaintiff asserts were signed by Joseph Goldberger and/or Joseph Menczer, including those documents referred to in the Amended Complaint…as the Note…" Although the stipulation edited by Mr. Ringel was not executed due to disagreements about the proper location to do the testing, it constitutes counsel's representation that the document was available for testing. See **Exhibit B**.

---

[1] Mr. Ringel stated that "[i]f they claim any of the other signatures are on there [were forged] then we need the same exemplars for that person." After I informed the Court of the contention that Menczer's signature on the Note also was forged, Mr. Ringel responded "[i]f that's the case then we need exemplars from Mr. Menczer." See Tr.30-31, Ex. C.

6. On or about March 21, 2018, the requested exemplars of my clients' signatures were delivered to counsel.

7. Less than two weeks later, via email dated April 3, 2018, Mr. Ringel sent me a Lost Note Affidavit signed and sworn to on March 28, 2018[2] by third-party defendant Judy Mintzer-Wolcowitz as Manager of Broadway Equity—right after receiving our original exemplars, in order to test the alleged Note for Mr. Menczer's signature. See **Exhibit A**. According to the Lost Note Affidavit, the alleged note it "**is not in the possession of Lender**, and after due and diligent search therefore, **Lender is unable to locate the Note**. Such Note has been misplaced." [emphasis added]; See Lost Note Affidavit, ¶¶ 3, 4.

8. The conveniently timed disappearance of the alleged original note is incredible. It is well established that defendants' primary defense to the foreclosure proceeding is that the loan documents are fraudulent and that the Note upon which plaintiff relies was forged. It is simply not credible that the original Note—which defendants have maintained never existed in the first place—suddenly went missing and that counsel for Broadway Equity and those who control it never informed me or this Court that the document most important to defendants' forgery defense would not (or could not) be produced. The only reasonable conclusion is that, to the extent that it ever existed, spoliation of the Note has taken place.

9. Indeed, the testimony given the Wertzberger Parties with respect to the original Note was at best, contradictory, Wertzberger first claimed with respect to the original Note and "side agreement", that he "took them" and "gave them to Akiva Weiss[3]" but then later claimed he

---

[2] On December 7, 2017, plaintiff's counsel provided Mark Kranz, Wertzberger's transactional lawyer, with a receipt memorializing the receipt of the original mortgage. *See* Exhibit H. This demonstrates, that, at minimum, plaintiff was likely aware as of this date what original documents existed. Yet, no mention was ever made of a purportedly missing note until a few days after receiving the requested exemplars—many months later.
[3] Akiva Weiss is someone Wertzberger claims to have hired to record the Mortgage. *See* Ex. D, Wertzberger Tr. 118-119

"handed the file to Judy Minster…together with all the originals" only to reverse course and claim that it "could be that I only gave her the copies".   Ex. D, Wertzberger Tr. 124-126.

10.     Minster also gave evasive and contradictory testimony.  She claimed not to remember if she had ever received the original Note from Wertzberger but later claimed that she "may have seen it in 2014 when it was given to me." Ex. E. Minster Tr. 66-72.  Minster also claimed in her interrogatory responses (Ex. I), that, contrary to her testimony, that Wertzberger attorney Mark Kranz "is responsible for maintaining and preserving documents and records containing the note and mortgage" but refused to explain this contradiction at her deposition. Ex. E, Minster Tr. 74-79.  By contrast, Kranz asserted that he never received the original note with the original signature. Ex. F, Kranz Tr. 81- 82.

**The Pleadings of the Wertzberger Parties Should Be Stricken**

11.     The obligation to preserve evidence arises when a party has notice that evidence is relevant to litigation or when that party should have known that the evidence may be relevant to future litigation.  *Fujitsu Ltd. v. Federal Express Corp*., 247 F.3d 423, 436 (2d Cir. 2001); *See Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities*, LLC, 685 F. Supp.2d 456, 466 (S.D.N.Y. 2010)(duty to preserve arises when a party "reasonably anticipates litigation"); *Treppel v. Biovail Corp*., 249 F.R.D. 111, 118 (S.D.N.Y. 2008)(party who reasonably anticipates litigation must place a "litigation hold" to ensure the preservation of relevant documents). There is no question that a note would constitute evidence that may be relevant to a future litigation.

12.     Spoliation is "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Board of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001), *quoting, West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d. Cir. 1999); *Orbit One Communications, Inc.*

*v. Numerex Corp.*, 271 F.R.D. 429, 435 (S.D.N.Y. 2010). Courts have long held that spoliators should not benefit from their wrongdoing. *See Reilly v. NatWest Mkts. Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000). Sanctions are warranted where, as here, "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim...such that a reasonable trier of fact could find that it would support that claim." *Taylor v. City of New York*, 293 F.R.D. 601, 609 (S.D.N.Y. 2013), *quoting Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). Sanctions are appropriate even if spoliation occurred before the issuance of a discovery order because the inability to comply was self-inflicted. *Orbit One.*, 271 F.R.D. at 435, citing, Turner v. Hudson Transit-Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991).

13. When evidence is destroyed in bad faith or with gross negligence, "that fact alone is sufficient to support an inference that the missing evidence would have been favorable to" defendants. *Regulatory Fundamentals Group LLC*, 2014 U.S. Dist. LEXIS 107616, at *41; S*ee also Arista Records LLC v. USENET.com*, 633 F. Supp. 2d 124, 141 (S.D.N.Y. 2009), *citing Residential Funding*, 306 F.3d at 109. Accordingly, in accordance with Fed.R.Civ.P. 37(b) and applicable case law, courts are empowered to levy various sanctions as a result of spoliation, "including dismissing the complaint or entering judgment by default, precluding the introduction of certain evidence, imposing an adverse inference, or assessing attorneys' fees and costs." *Orbit One.*, 271 F.R.D. at 435; *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-107 (2d Cir. 2002). Such sanctions are designed to deter spoliation, place the risk of any error on the party who engaged in spoliation and to restore the prejudiced party to the position that he would have been in

absent the destruction or "loss" of evidence. *See Ceglia v. Zuckerberg*, 2013 WL 1208558, *58 (W.D.N.Y. Mar. 26, 2013), *citing Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998).

14. The genuineness of the Note goes to the heart of defendants' defenses to foreclosure and plaintiff's claims respecting the circumstances surrounding the mortgage.

15. The expert proffered by the Wertzberger Parties admitted that, in the absence of the mysteriously missing original documents, the genuineness of the loan documents at issue in this case cannot be ascertained because anyone can simply copy and paste a signature and make a copy. Indeed, the expert proffered by the Wertzberger Parties admitted that she therefore did not examine the documents for authenticity at all. *See* Ex G, Tr. 54, 69, 71-72.

16. As a matter of established New York law, a plaintiff in an action to foreclose a mortgage can establish its case only through the production of a mortgage, an unpaid note and evidence of default. *Wells Fargo Bank, N.A. v. Ullah*, 2015 WL 3735230, *4 (S.D.N.Y. June 15, 2015). In fact, in the absence of a valid note, plaintiff lacks standing to pursue this foreclosure action in the first place. *See Eastern Savings, FSB v. Thompson*, 2016 WL 2977268 (E.D.N.Y. May 19, 2016)(the note, not the mortgage, is the dispositive instrument that conveys standing to foreclose under New York law)(citations omitted).

17. This is true whether or not there is other evidence of a debt. For example, in *Bank of NY v Silverberg*, 86 AD3d 274, 283 [2d Dept 2011], the Appellate Division dismissed a complaint for foreclosure despite overwhelming evidence of the debt. The Appellate Division held that, because the plaintiff had not been the lawful holder of the subject note, it could not foreclose on an otherwise valid mortgage. *See also Knox v Countrywide Bank*, 4 F Supp 3d 499, 508 [EDNY 2014].)("an entity with a mortgage but no note lacked standing to foreclose")

18. There are only two possible conclusions at which one can arrive. The first is that the Note with original signatures was subject to spoliation after a date when plaintiff reasonably

anticipated litigation and, therefore, was subject to the preservation requirement. The second lends credence to defendants' contention throughout this action—that because they never affixed their original signatures to the Note, a document containing those signatures never existed in the first place, the signatures shown on the copies were forged and it is that document that has been spoliated before an expert can determine the forgery.

19. In either event, plaintiff should be subject to severe sanctions. Needless to say, defendants have been prejudiced because the intentional destruction of the document has irreparably impaired their ability to challenge its authenticity by having it professionally examined and evaluated. Under this background, it is respectfully submitted that, upon motion by defendants, the only appropriate sanction would be to dismiss the foreclosure complaint in its entirety with prejudice. *Chambers v. NASCO, Inc*., 501 U.S. 32, 45. 111 S. Ct. 2123 (1991)("outright dismissal of a lawsuit…is within the court's discretion" and is appropriate where there has been "willfulness, bad faith or fault on the part of the sanctioned party").

20. Absent the dismissal of the foreclosure complaint, plaintiff's conduct would go unpunished. In all events, this Court ultimately will have no choice but to dismiss the foreclosure action for lack of standing, as standing to foreclose cannot be conferred absent the production of a valid note. If, however, after considering the motion, this Court declines to dismiss the foreclosure complaint, then it should preclude plaintiff and counterclaim defendants from using or referring to the Note or Side Agreement for any purpose in this action, as its destruction has impaired defendants' from presenting their forgery defense. *See Innis Arden Golf Club v. Pitney Bowes*, Inc., 257 F.R.D. 334, 343 (D. Conn. 2009). Merely sanctioning plaintiff and counterclaim defendants with an adverse inference does not adequately serve the preventative purpose of the spoliation doctrine.

WHEREFORE, it is respectfully requested that this Court grant defendants-counterclaim plaintiffs' motion in its entirety.

Dated: New York, New York
      April 17, 2019

Respectfully submitted,

LAW OFFICE OF JEFFREY FLEISCHMANN PC

By: /s/ Jeffrey Fleischmann
     Jeffrey Fleischman
150 Broadway, Suite 900
New York, NY 10038
Telephone: (646) 657-9623
Facsimile: (646) 351-0694
*Attorney for Defendants 152 Broadway Haverstraw NY LLC, Blue Beverage Group, Inc., Joseph Goldberger, Toby Weinberger, MFT Holdings LLC, Estate of Jeno Guttman and Ryvkie Goldberger and Counterclaim Plaintiff Joseph Menzer*